IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:01-CR-176-1 |
| | ) | |
| JEFFREY DESHEA PRICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant, Jeffrey Price, seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Price committed multiple violent offenses and has an extensive disciplinary record while incarcerated. Even assuming Mr. Price has shown extraordinary and compelling circumstances, the § 3553(a) factors do not support a sentence reduction. The motion will be denied.

### I. The Pending Motion

Mr. Price asserts that a sentence reduction is appropriate based on the pandemic, sentencing disparities between his sentence and that imposed on his co-defendant, changes to sentencing guidelines and laws, and his rehabilitation. Doc. 83, *as supplemented* Docs. 87, 89, 91, 92. The probation office has filed a report evaluating his proposed release plan and providing other information. Doc. 90.

### II. Facts

Mr. Price began committing crimes when he was 17 years old, and he was in and out of prison several times before committing the offenses here when he was 21 years

old. Doc. 81 at ¶¶ 66–69.[1] On August 25, 2000, Mr. Price and a co-defendant, armed with guns and with their faces covered, entered a credit union in Wagram, North Carolina. *Id.* at ¶ 7. Upon entering the credit union, Mr. Price fired a round into the ceiling and he and the co-defendant ordered the tellers and customers to the floor. *Id.* After taking a customer's check book and wallet, Mr. Price demanded that a teller open the vault while the co-defendant took money from the teller drawers. *Id.* at ¶ 8. As the teller attempted to open the vault, both Mr. Price and the co-defendant pointed their guns at her and threatened to shoot her if she did not open it faster. *Id.* After the teller opened the vault, Mr. Price and the co-defendant took money from inside the vault, ordered everyone into it, and closed the door. *Id.* at ¶ 9. Mr. Price and the co-defendant then fled. *Id.* An audit revealed that Mr. Price and the co-defendant took $92,502.51. *Id.* at ¶ 11.

Around five weeks later, on October 3, 2000, Mr. Price drove a different co-defendant to a residential area in Fayetteville, North Carolina. *Id.* at ¶ 16. Mr. Price waited in his car while the co-defendant approached a woman seated in her car in her driveway. *Id.* at ¶¶ 13, 16. As she was leaving her vehicle, Mr. Price's co-defendant, who was wearing a ski mask and holding a semiautomatic weapon, threatened to kill her if she did not get out of her car. *Id.* The woman's five children, ages three months to eleven, were seated in the car. *Id.* The woman exited her vehicle and screamed, "Please let me get my children out of the car." *Id.* Mr. Price's co-defendant pointed his gun at the children and said, "You got five seconds to get them out or I'll shoot them." *Id.* The

---

[1] At the sentencing hearing, the Court adopted the presentence report, Doc. 81, with no changes. Doc. 48 at 7.

2

Case 1:01-cr-00176-CCE   Document 93   Filed 01/11/22   Page 2 of 8

children were able to get out of the car, though the mother was able to retrieve one child only after the co-defendant began driving away. *Id.* at ¶ 14. Mr. Price followed his co-defendant to an abandoned home, where they broke into a garage and stored the vehicle. *Id.* at ¶ 16. As a result of the carjacking, the woman sustained a dislocated knee, strained ankle, and a strained wrist, and her children were treated for minor injuries. *Id.* at ¶ 15.

The next day, October 4, 2000, Mr. Price and the co-defendant from the August 25 robbery retrieved the stolen vehicle and drove it to a BB&T bank in Sanford, North Carolina. *Id.* at ¶ 18. They entered the bank armed with guns and wearing masks and gloves. *Id.* at ¶ 19. Mr. Price approached a bank teller, pointed his gun at the teller's head, and fired a shot—the bullet missed the teller by approximately six inches. *Id.* He ordered bank tellers to place cash from their teller drawers on the counter and ordered them to lay on the floor; the co-defendant took the money from the counter and from an open safe. *Id.* They fled the bank in the stolen vehicle. *Id.* An audit showed that Mr. Price and the co-defendant had taken $280,464.88. *Id.*

Mr. Price was arrested roughly two weeks later in Colorado. *Id.* at ¶ 23. A few months later, he was indicted on robbery, carjacking, and firearms charges. *See, e.g.*, *id.* at ¶ 1–3. In August 2001, Mr. Price pled guilty to two counts of armed bank robbery, one count of carry and use of a firearm during and in relation to a crime of violence arising out of the October 4 robbery of BB&T, and one count of carjacking. *Id.* at ¶ 4.

Mr. Price's guideline range for the robberies and carjacking was 151 to 188 months in prison. Doc. 81 at ¶ 101. Mr. Price faced a mandatory consecutive minimum sentence of 120 months imprisonment for the firearm charge. *Id.*

3

In December 2001, the court sentenced Mr. Price to 292 months in prison. Doc. 32. At sentencing, the experienced trial judge noted that Mr. Price's October 4, 2000, bank robbery was "one of the worst" and that Mr. Price "gave every indication that people were going to be killed in that bank." Doc. 48 at 50–51.

Mr. Price committed the offenses when he was 21 years old, and he is now 42 years old. Doc. 81 at p. 2, ¶¶ 7, 13, 18. He is currently housed at USP Canaan and scheduled for release in October 2023. *Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Jan. 7, 2022).

Mr. Price has hypertension, chronic kidney disease, and latent tuberculosis. Doc. 86-1 at 8, 37, 47. The CDC advises that persons with chronic kidney disease and tuberculosis are at increased risk of severe illness from COVID-19 and that persons with hypertension are possibly at an increased risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 7, 2022).

In January 2021, Mr. Price received the COVID-19 vaccine. *Id.* at 52. He is housed at USP Canaan, and Mr. Price reports that COVID-19 "has spread again" in the facility. Doc. 92 at 1. The BoP reports 41 inmates and six staff members at USP Canaan are currently positive for COVID-19 and 352 inmates and 114 staff have recovered since the start of the pandemic. *See COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 7, 2022). USP Canaan also reports that 1,226 inmates and 214 staff members are fully vaccinated. *See COVID-19 Vaccine*

4

*Implementation*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 7, 2022).

While incarcerated, Mr. Price has completed over 50 different types of educational courses for a total of 674 hours. Doc. 90 at 7. He has also accrued around 50 disciplinary infractions since 2003, including infractions for threatening bodily harm, possessing a dangerous weapon, engaging in sexual acts, and assaulting without serious injury. *Id.* at 2–7. Eleven of these infractions occurred in 2018, but there have been none since. *Id.* at 6–7.

If released, Mr. Price plans to live with his mother in Florida. *Id.* at 7. After a home visit, the probation office determined her residence was acceptable. *Id.* Mr. Price's mother is a registered nurse and has offered to help him find treatment for his medical needs. Doc. 87-6 at 1.

## III. Analysis

Courts do not have unfettered discretion to modify criminal sentences after they become final. *See United States v. Goodwyn*, 596 F.3d 233, 236 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

To proceed under § 3582(c)(1)(A), the movant must first satisfy the administrative exhaustion requirement if the government invokes it. *See United States v. Muhammad*, 16 F.4th 126, 129–30 (4th Cir. 2021) (holding the threshold exhaustion requirement may

5

be waived or forfeited). Then, he must show that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and that the § 3553(a) sentencing factors merit a reduction. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).

Mr. Price has made a facial showing of exhaustion. *See* Doc. 83 at 6. To demonstrate extraordinary and compelling circumstances, he asserts that he has several medical conditions that may put him at greater risk of complications from COVID-19. *Id.* at 4–5. He also points to the length of his sentence and sentencing disparities between himself and his co-defendant, changes to the sentencing guidelines and laws, and his rehabilitation efforts. *Id.* at 3–5.

The Court finds Mr. Price's evidence supporting extraordinary and compelling circumstances to be relatively weak but need not address his contentions in detail. Even if the Court assumes that he has established extraordinary and compelling circumstances—that he has health issues and is at high risk of severe complications from COVID-19, that his guideline range if he were sentenced today would be lower, that his co-defendant received a lower sentence for the same conduct, and that he has made extraordinary rehabilitation efforts—they would still be outweighed by the nature and circumstances of his violent crimes. In short, the § 3553(a) factors do not support release. *See United States v. High*, 997 F.3d 181, 186–87 (4th Cir. 2021) (finding no error in denying motion on § 3553(a) grounds without determining whether there are extraordinary and compelling circumstances).

Within the course of a few weeks, Mr. Price robbed two banks and participated in a carjacking. All of the crimes involved firearms and were committed with considerable violence: Mr. Price fired his gun while pointing it at a bank teller's head, and, along with his co-defendants, threatened to kill multiple victims. He watched while his co-defendant threatened to kill a defenseless mother and her children during a carjacking. The experienced judge who presided over his trial and sentenced him stated that the October 4, 2000, bank robbery was "one of the worst" and that Mr. Price and his co-defendant "gave every indication that people were going to be killed in that bank." Doc. 48 at 50–51. A sentence reduction would not recognize the seriousness of the crimes, provide appropriate punishment, protect the public, or promote respect for the law.

In addition to the violent nature of his offenses, Mr. Price has an extensive disciplinary record—he has accrued roughly 50 disciplinary infractions while incarcerated, including major infractions for threatening bodily harm, possessing a dangerous weapon, and engaging in sexual acts. Doc. 90 at 2–7. Even though, to his credit, Mr. Price has completed 687 hours of educational programming while incarcerated and has no disciplinary infractions since October 2018, *id.* at 7, his disciplinary record does not reflect rehabilitation or a willingness to conform his behavior to societal rules.

Mr. Price does have a solid release plan, with family offering housing, medical support, and to assist him with his transition from incarceration. Doc. 90 at 7; Doc. 87-5; Doc. 87-6. But Mr. Price's release plan is not sufficient to override concerns related to other § 3553(a) factors.

7

Even assuming Mr. Price has shown extraordinary and compelling circumstances, the § 3553(a) factors do not support a sentence reduction. The motion will be denied.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 83, is **DENIED.**

This the 11th day of January, 2022.

_____
UNITED STATES DISTRICT JUDGE

8

Case 1:01-cr-00176-CCE   Document 93   Filed 01/11/22   Page 8 of 8